5th Circuit Court of Appeals. We have one case to be presented today on special oral argument for a motion for stay. The case is ODonnell v. Goodhart. Just a couple of preliminary things. As you may notice, we have a panel consisting of one judge from each of our three states. It's not intentionally that way, but it works out nicely when that occurs. It's particularly nice to welcome Judge Kyle Duncan, who's fairly new to our court. He's the newest arrival to our court, though he's not the most junior member. I won't take time to explain how that is so, but he's here from Baton Rouge and we're glad to have him. I'm particularly glad also to have Judge James Graves, who's here on a regular oral argument panel this week. Judge Graves is from Mississippi. I'm going to just indulge for a minute to say that our court is particularly proud of Judge Graves. It's just been announced that in September he will receive an honor from Syracuse Law School, the so-called Honors Award, and that's particularly significant because the other honoree is former Vice President Joe Biden. So you're in good company, Judge Graves, and we're very happy to have you here as a member of the panel. We have 30 minutes per side for argument, and we begin with Mr. Cooper. Thank you very much, Your Honors, and may it please the Court, Charles Cooper for the appellants in this emergency motion for stay pending appeal of the preliminary injunction, and Judge Graves, let me extend my congratulations to you as well, if I may. This case has some history in this court, and before I get to the merits, I'd like to outline some of the features of that history that I believe are important to the issues before the court. The parties in this case previously appeared before the court just last October on our appeal of the district court's original preliminary injunction. That original preliminary injunction required Harris County to release virtually all misdemeanor arrestees who declared that they cannot pay money bail and to do so within 24 hours. The panel described the original injunction as, quote, amounting to an outright elimination of secured bail for indigent misdemeanor arrestees. The court vacated that injunction just last June, finding that it was not narrowly tailored to remedy the purely procedural constitutional violations found by the district court. And then it framed an extraordinary, detailed model injunction. Because the court had found that the constitutional deficiencies were, quote, mechanical application by the county magistrates of the secured bail schedule without regard for the individual arrestees' personal circumstances, the panel's model injunction required the purely procedural relief of an individualized hearing within 48 hours of arrest. Now, we're back before you now on the revised injunction because on remand, the district court again entered a sweeping release order. In fact, it entered two release orders. I will focus primarily on one of them, Section 7, unless I have time to get to the other one. But that requires that misdemeanor arrestees who cannot pay the amount of secured bail preset on the county's master bail schedule that they must, quote, be promptly released before an individualized hearing. And on the same release schedule, the same timeframe of release, that a misdemeanor arrestee who is able to pay the preset amount of money bail would receive. The district court held that this was a necessary remedy to prevent discrimination based upon wealth. Now, before I get to that equal protection question on the merits, I want to outline three reasons why the preliminary injunction simply doesn't get out of the starting blocks. The first one is this court's mandate. The district court repeatedly justified its release order under Section 7 on the ground that it does not actually order anyone to be released because the county has the option of detaining all arrestees, both those who cannot pay the preset amount of bail as well as those who can and want to and are willing to pay to win their immediate release. But under the district court's all or nothing, all or none, equal protection theory, whether Section 7 is understood as a mandatory release order or understood as a mandatory detention order, the county's choice is still made under the compulsion of the order. So it is plainly substantive and not the procedural relief that this court ordered in its mandate. Let me read. Can I ask you a question, Mr. Cooper? Certainly. It seemed to me that in the district court's memorandum of opinion explaining the amended injunction, the district court, and maybe the plaintiffs, also, take the position that this Section 7 relief is responsive to something that came up after the original remand from this court. If I got that right, what is your position on that? Is that accurate or not? Well, Your Honor, we don't think that is accurate. The way the preset bail schedule works. You did come up with a brand new 20-category bail schedule, didn't you? Post the April 2017 order. Actually, that bail reform schedule was put in place shortly before the original preliminary injunction hearing. So it wasn't after, it was before. Well, it was before the preliminary injunction hearing, but it never came into effect because the judge's original preliminary release order. Is it still not in effect? Actually, it has now gone into effect essentially for the first time as a result of this court's. So when the judge wrote the amended preliminary injunction order, that was with a view towards this brand new 20-category bail schedule. Is that right? Well, there was a new bail schedule, yes, Your Honor. But it does not, it is not distinguishable from the previous bail schedule in terms of how it operates on those people who can or cannot pay immediately the scheduled amount of bail. Well, and another question in connection with that, who applies a 20-category bail schedule? Is it hearing officer, county judges, sheriff, district attorney, who applies it? Your Honor, the place that you fall within the 20 categories, seven of which are eligible for, are presumptively eligible for personal bond, that is unsecured money bail. Although people can pay secured bond and get out immediately, or that's the way it's always worked, and it still works under this new matrix. But where you fall on it is determined by an algorithm that takes into account nine different factors, such as your previous criminal record, whether you had previous violent felonies, your previous failure to appear rates, the nature of the offense, those kinds of things. But if you fall within the seven categories where the payment of the preset bail, you're eligible to pay preset bail and get your immediate release, the court's preliminary injunction, it's Section 7 of it, now says, no, either those people who can and are willing to pay must be detained until the people who cannot pay have had a chance to have their hearing, or everybody has to be released on unsecured bail. So that's the theory for why this isn't a release order. But before getting to the flaws in that theory, again, the preliminary injunction is simply inconsistent with at least three features of this court's mandate. The mandate is worded exactly this way. We vacate the preliminary injunction as overbroad and remand to the district court to craft a revised injunction, one that is narrowly tailored to cure the constitutional deficiencies the district court properly identified. Again, what were those constitutional deficiencies? As I quoted earlier, the mechanical application of the bail schedule without considering individual circumstances. That was the constitutional deficiency previously found. And, Your Honor, going to your question, Judge Duncan, as the district court admitted, it had not previously identified this supposed constitutional deficiency. And it could have, Your Honor, because for decades this bail schedule has operated to allow people who can pay the preset amount to immediately get their release. So what further tailoring do you suggest would be sufficient constitutionally? Your Honor, we submitted to the district court on remand that it should simply enter as is this court's very detailed injunction, modeled preliminary injunction as is. It was clearly tailored by the court with great care to address the constitutional deficiency that had been found. But you can see that the court did say in that order that it would leave the details to the district court. Yes, Your Honor. But, Your Honor, it was a far cry. Well, you seem to be suggesting that it left nothing to the district court. You have a model injunction and adopt it and add nothing. That seems to be your recommendation. Am I wrong? Well, that was my recommendation. It's not one that was binding on the court, but it was certainly the safest course for the court to follow. But, Your Honor, nothing. What I'm submitting to you is that the court went so far beyond that model injunction that it actually violated the mandate. This was substantive release order, not the procedural hearing requirement that this court identified as the complete remedy for the constitutional deficiencies that had been found. The court on remand found a new constitutional deficiency that was introduced only on remand as the court admitted. The pleadings that we've gotten recently seem still to put in dispute the question whether substantive due process is at issue in the case. Is it your position that it still is or is not at issue? Your Honor, we continue to believe that the district court has said, and this has been very clear both in the first preliminary injunction opinion and in the most recent preliminary injunction opinions, that substantive due process was not on the table at the preliminary injunction stage. Now, the plaintiffs believe that they had put it on the table, but the court interpreted their pleadings otherwise, and that's the posture that the case presents itself both to the previous panel and that it presents itself again to this panel. But regardless, Your Honor, of what the fundamental bases are for the preliminary injunction, and the court put it completely on equal protection, my initial point here is that it can't be squared with the mandate that the district court was under. This was not narrowly tailored relief to deal with the purely procedural constitutional violations that had been found. The other point, Your Honor, is that this court's model injunction itself contemplated precisely the conditions that the district court on remand then declared unconstitutional. It contemplated that the preset bail schedule would operate just as it always had, and that people who, immediately after arrest, could and did make money bail, they would be immediately released, but that the people who could not were entitled to that individualized hearing within 48 hours. That was contemplated by the model injunction. The district court's preliminary injunction now declares that unconstitutional. The other irony in this case is that the district court's original preliminary injunction, vacated as it was, as being overbroad, it too contemplated precisely the operation of the preset bail schedule, although it had a more compressed time frame, of 24 hours. Your Honor, there's a second reason why the equal protection merits argument on this preliminary injunction doesn't get out of the starting block. That's Prysor. Prysor very clearly holds, Your Honors, that habeas is the exclusive remedy in federal court for seeking release from physical confinement by the state. Well, they say you waived it, so what's your response to the waiver? Well, first of all, even if we accept, and Your Honor, this is hard for us to do, but even accepting that we waived it on the initial preliminary injunction, we certainly didn't waive it when we went back on remand and a new theory developed by the court to justify a new preliminary injunction and a sweeping release order. We certainly didn't waive that. When that was put on the table, we immediately said, wait a second, Prysor forbids that. The only way to get that release order is to go to federal, in a federal court anyway, is to bring a habeas corpus petition. So, Your Honor, I certainly can't be taxed with a waiver as I stand before you now. Before I leave this point, though, I urge the court to, if it concludes we did waive somehow our Prysor argument, to release us from the burdens of that waiver. We believe, and we've set out in our papers, the considerations that we believe would justify that. And most important of which is, we certainly can't be held to that waiver as we now go back and litigate the permanent injunction, Your Honor. It's one thing for us to have waived it at the preliminary stage. We certainly aren't waiving it and do not plan to waive it and will assert it with respect to any relief that is contemplated in the permanent injunction. Your Honor, the argument under Prysor that the district court advanced, that I want to outline here, is that it doesn't apply when you're talking simply about transfer of custody from one form of custody to another form of custody of the same duration. Prysor itself makes clear that that's not the case because it was dealing with transfer of physical custody to a parole, a different form of custody for the same duration. So Prysor itself answers that point. And beyond that, the cases are uniform. That habeas corpus is the exclusive remedy for seeking release on bail, in federal court anyway. And there's not a single case that has been cited by the district court or the plaintiffs contrary to that proposition. The third stop sign, if you will, at the threshold of this preliminary injunction, revised preliminary injunction in Section 7, is the Eighth Amendment itself. That is the exclusive constitutional basis for relief for complaints about the quantum of bail. And that's what at bottom this case is all about. It's just a question of some of the arrestees, indigent arrestees, cannot pay the quantum of bail, whether it's set in a pre-set bail schedule before a hearing or whether it's set by a magistrate after a hearing. Some individuals simply can't pay that. And the Eighth Amendment is the exclusive constitutional basis for challenging that kind of a problem. And it is inherent in the Eighth Amendment. The Eighth Amendment prohibits excessive bail. It by definition contemplates, as the district court recognized, contemplates that some people will not be able to afford bail and others will. That's inherent in the nature of it. And beyond that, Your Honor, the Supreme Court's decision in Graham against Connor makes clear that the general prescriptions of the Fourteenth Amendment do not somehow overrule or trump the more specific limitation on bail and exclusive limitation on bail contained in the Eighth Amendment. Let me now very quickly proceed to the merits of the court's equal protection analysis. And first, Your Honor, what is that issue? Well, at bottom, the question before you is, are pre-set bail schedules constitutional? Pure and simple. Are we bound here by the previous panel's determination that it's intermediate scrutiny that applies to the equal protection claim? I don't believe you are. Why not? Well, the court held there that the constitutional deficiency under the Equal Protection Clause as well as under procedural due process was, again, the state magistrate's failure, its rote application of the bail schedule, its failure to consider individual circumstances. So it was saying that the hearings that were before those magistrates were not bona fide. They weren't actually searching for other considerations unique to the individual that might provide the sufficient sureties that under Texas law would entitle them to pretrial release. Didn't the panel also find that it was deliberate discrimination on the basis of indigency? Yes, Your Honor. The application of the bail system. Purposeful discrimination. Purposeful, yeah. This application can't be viewed as purposeful, Your Honor. It is, certainly it is disparate impact, but it's not disparate treatment. The same bail is applied to everybody rich or poor. And yes, it has a disparate impact as bail always does before or after a hearing. But yes, the panel did say it was purposeful discrimination essentially because the magistrates, we believe this is not factually accurate, I'm bound to say, but the magistrates in Harris County were blinding themselves to anything but the bail schedule. And so that was purposefully, that custom and practice, according to the previous panel, was purposefully visiting that disparate impact on these individuals. And as a result of that distinction, your position, if I understand it, is that rational basis scrutiny should apply should we reach the merits of equal protection. Should you reach it, should you reach the merits, it should be rational basis scrutiny, Your Honor. But again, and that disparate impact is an inherent and definitional feature of money bail. It can't be escaped. And if that's unconstitutional, it's unconstitutional whether you apply it before a hearing or after. And so the real question before you, even though it arises here in the context of before the individualized hearing, is whether or not money bail is prohibited by the Equal Protection Clause. That's really, that's what this case boils down to, pure and simple. The other point that needs to be made as I approach my rebuttal time, Your Honor, is that this court in Bank, in the Pugh against Rainwater case, lauded pre-set bail master schedules. Your initial time has expired unless you want to use some of your rebuttal time now. If I could just use another 30 seconds of that time, Your Honor, because I want to make this point that the preliminary injunction before you, Section 7, it ignores the practical reality that there is some irreducible period of time that simply can't be compressed any further before the state can give you that individual hearing. And so the previous panel and the Supreme Court in McLaughlin said the Constitution permits the state's authorities 48 hours to have that hearing. This county strives to do it in 24 and succeeds typically. But there is an irreducible amount of time before which you can get that hearing. And so this... And money bail may be imposed at that time. Isn't that right? That is true, Your Honor. That is true. And so the question becomes, is that a constitutionally required feature of the Equal Protection Clause? Is it true that the Equal Protection Clause requires for that 48 hours anyway for either those who can pay money bail and who can provide the sufficient sureties that the Texas Constitution says entitles them to be released then and there, have to be gratuitously confined in order that there would be an individual hearing for those who cannot? That's the bottom line question before you. Our respectful submission is that the Constitution does not require that mandate of this preliminary injunction. Thank you. All right. Thank you, Mr. Cooper. You saved six minutes for rebuttal. Thank you. And I'm going to let you pronounce your name because I'm sure that I'll mess it up. So I apologize for that. Thank you. I always mess it up too. It's Alec Karakatsanas for the appellees. Thank you. May it please the Court. Good afternoon. The issue in this appeal is very narrow. It has to do with policy for treating arrestees prior to an individualized hearing. The real dispute between us and the appellants is are they permitted to discriminate on the basis of wealth for 48 hours? They want you to answer that question categorically based on the Fourth Amendment. They want you to say you are permitted to detain the indigent for 48 hours and also you're permitted to do whatever you want to arrestees for 48 hours. The logical implication of their argument, which they make clear in their summary judgment briefing below, is that they could do the same thing with women, with men, with the poor, with people of a certain religion. Because if you have a safe harbor for 48 hours, whatever policy you put in your bail schedule, so long as you get them to an individualized hearing, is constitutional. That is precisely contrary to what the panel held for a couple of reasons that I want to be very clear about. So do you acknowledge, though, that ultimately there can be discrimination on the basis of wealth, that is, ability to post bond? Yes, Your Honor. As the panel held, you can discriminate on the basis of wealth. You just have to meet heightened scrutiny. You have to show that you have a good reason for it. They could have done that. That's what the whole eight-day trial was about. The trial was about do they have good reasons, that is to say, do they have any evidence at all that secured money bond increases appearance or protects the public? Had they been able to show Judge Rosenthal that there was some benefit to it, then they would have been able to meet their burden to show under heightened scrutiny that they can automatically apply it to everybody for 48 hours. But the panel's opinion that is critical for this court, and I think it's obscured in some of the back and forth filing in this emergency appeal, so I want to be absolutely crystal clear about it, is the panel simply held you can discriminate on the basis of wealth. You just have to justify it. And that's why the district court's factual finding, which the panel said, quote, squarely rejected the argument that imposing secured bond served the county's interests in ensuring court appearance and public safety. In the motion for stay, the appellants make the following statement. I'm going to read it and then you can evaluate and tell us whether that appears in the record, they say. Quote, during the year that the preliminary injunction has been in effect, 44.65 percent of arrestees released on unsecured bonds pursuant to the preliminary injunction have had bonds forfeited for failure to appear, compared to only 9.85 percent of arrestees who provided a secured money bond. Again, that's a direct quote from what they said in their motion. Absolutely not, Your Honor. And the district court rejected that finding. We heavily disputed it. We submitted declarations. Are you saying the numbers are wrong? Numbers have never been put into the record, Your Honor. They are allegations by a court manager that they submitted an affidavit to the panel in the Fifth Circuit. That declaration was submitted to get the panel to do what they're asking you to do today, to impose its revised injunction. The panel rejected it. Judge Clement and Judge Haynes, sitting together because Judge Prado had by that time departed, they rejected that argument on the basis of declarations from the plaintiffs that showed two of the judges, including one of them who had originally appealed, categorically rejected those and indicated that those statistics had been falsely generated and manipulated. And then we had our expert, who the district court credited, who did an actual data analysis and showed that they were incorrect. The district court in her stay denial rejected the assertion because it's based on bond forfeitures, which the district court said is entirely useless. I understand. Your theory on that is that it's subject to too much manipulation or too much individual judgment. Is that right? Not only that, Your Honor, but we know for a fact from looking at the data that it has been manipulated. And that's a factual question for the district court. That's going to be the big dispute at trial. I think there's one part of their brief that is absolutely telling that I want to highlight for the court. They say that the district court's factual findings are, quote, startlingly counterintuitive, end quote, on page 14. The reason they say that, Your Honor, is they cannot prevail in this stay motion without this court rejecting the district court's core factual finding, which the panel affirmed, which is, quote, reams of empirical data suggests the opposite. That is a critical factor for both the merits inquiry and the harm inquiry. Let me talk about the merits just very briefly. Before you do that, let me just ask you the same question I asked Mr. Cooper. And now I've found the place where the district court says this. In the district court's opinion, sort of explaining the amended injunction at page 8 and 9, she writes, the plaintiffs point out the defendant's characterization of this provision, meaning section 7 is overbroad, and that this section, meaning section 7, is narrowly aimed at addressing a problem that arose after the Fifth Circuit proceedings. Could you explain that to me? In what way did the problem that is addressed by section 7 arise after the Fifth Circuit proceedings? All of the same legal theories and issues were raised both before and after the injunction. Meaning the district court could have found an equal protection violation based on disparate treatment during the 48-hour period the first time around? Not only that, but she did. Yes, could have? Yes. But she didn't. She did find that, Your Honor. Yes, she did. And instead of imposing the remedy that she imposed now, in an effort to preserve a stable status quo, she allowed them actually 24 hours of disparate wealth-based treatment. We objected to that strenuously, Your Honor, in the district court. But because it's a big system and in order to facilitate this introduction of these new affidavits, she allowed them that 24-hour period. But then the issue was really crystallized, Your Honor, by the bail schedule that they passed in reaction to that, which automatically labeled 13 categories for detention, and then took seven categories that are the least risky, the least serious offenses, and they chose to make those categories presumptively eligible. And when did that happen in this rather complex timeline? I don't want to misspeak, Your Honor, but we'd be happy to provide post-argument briefing just to answer that factual question. It's in the record, but I don't exactly know. I don't want to misspeak. But I want to make a critical point. In the category of 13, are they all detained without regard to wealth? Yes, Your Honor. Until they receive a hearing and the individualized bail assessment? Yes, Your Honor. And I want to make just an observation about that point, Judge Graves. Many of the same lawyers also represent Dallas County in a similar lawsuit. Dallas County announced publicly last week that it is doing exactly what Mr. Cooper says would be anathema to the history of bail. They are keeping every arrestee in custody until an individualized bail hearing. And at that hearing, they can impose monetary bail. They can even impose monetary bail that a person can't afford. There's nothing about our constitutional claims that suggests that a person can't, under the federal constitution, be given a bail amount they can't afford. Many of the representations that are being made in the stay motion are just not accurate. They're not accurate reflections of what the district court has carefully, meticulously waded through. Let me just make a very brief point about the merits of this case. The panel held that when you have wealth-based detention, you have to meet heightened scrutiny. Isn't it purposeful wealth-based discrimination? Isn't that what the panel said? That is what the panel held, Your Honor. So purposeful. It's not correct to say it's wealth-based discrimination. It's purposeful. That's the only way you get intermediate scrutiny under Rodriguez. Or do you disagree? We disagree with that, Your Honor. Of course. On what basis? As we pointed out in our merits briefing in the first appeal, and as this court held, under a long line of Supreme Court cases, and the key case here is Rodriguez itself, which distinguished when it was making the disparate impact holding, it distinguished the Tate-Williams-Bearden line of cases. It said in those cases you still get that scrutiny. MLB versus SLJ, the Supreme Court case that's cited in our merits brief, similarly says the same thing. So that theory has been rejected. It's also binding precedent in this course, of course. Your position is that in the first appeal from this court, this court held that you don't have to have purposeful discrimination on the basis of wealth in order to trigger intermediate scrutiny? Is that your position? That's what the Supreme Court has said, but I don't think it matters here, Your Honor, for the following reason. The district court and the court of appeals found that there was purposeful wealth-based discrimination. They've since passed a new bail schedule that does the same thing. We don't even need to get into that disagreement, but I encourage the court to do so. Well, the argument from your friend on the other side is that the putative discrimination that's going on during the 48-hour period is not purposeful discrimination. It's disparate impact only. What's your response to that? It's just incorrect. They're intentionally passing a policy that says that anyone who can't afford to pay a monetary bail amount is subject to detention for up to 48 hours. That's what the Fifth Circuit held. The Fifth Circuit panel said automatic adherence to that policy is purposeful. So I don't want to get into a disagreement about what the panel meant by its word purposeful because it doesn't matter. And it doesn't matter because under Bearden and this court's opinion in Frazier, when you set an amount of money, whether it's a fine or a monetary bail, and you know the person can't pay it and they're going to be in jail, whether you call it purposeful or inadvertent, it triggers the same scrutiny. And this is the point that I think is really key. Under the panel's decision, they might be able, and they're going to certainly try at trial, to justify this period of wealth-based discrimination. The district court's factual finding precludes them from making that argument in this interlocutory appeal because the district court found that there is no benefit to secured money bail, and, in fact, it actually increases failure to appear in the future and increases criminal activity. They don't like that factual finding, but it's in the record, and there is no way for this court to rule in favor of their position on this stay motion without rejecting that factual finding. And I want to, I think this is also related to a deep confusion in Mr. Cooper's oral argument today and in their briefs, which is that this case involves somehow only procedural rights. Didn't our panel of this court that we're bound by hold that? No, Your Honor. This is a procedural due process violation. It held that there is both a procedural due process violation and an equal protection violation. And that the relief has to be procedural. Did we not hold that? I don't think so, Your Honor, and I think here's why. They have seized on this stray sentence in the panel's opinion, which suggested that some of the relief might be the same under both violations. Of course, that's not what the panel's holding under the equal protection clause means. The cases that it relied on were all substantive cases, and I think this is what they're hoping that they can confuse the court on. When we talk about substantive constitutional rights, we're not just talking about substantive due process rights. A substantive constitutional right can be anything. It can be the Second Amendment, the First Amendment, or in this case, Bearden v. Georgia, which is a substantive constitutional right under equal protection and due process. I encourage the court, because things have been rather rushed, to take a look at our briefing in document number 465 at pages 12 to 16, and at page 25, and at document 402. We carefully and meticulously go through the Supreme Court's decision in Washington v. Harper, which is 494 U.S. 210 at 220 and 228. In Washington v. Harper, the Supreme Court explains the difference between a substantive constitutional right and a purely procedural constitutional right. For example, I have a constitutional right under the Second Amendment and under the First Amendment to possess a firearm and to publish a book. If the government wants to tell me that you can't possess that firearm in your home and you can't publish that book, it has to meet a standard that's set forth under federal law. In other words, heightened scrutiny, it has to say, there's a good reason for preventing me from having that gun and for publishing that book. It wouldn't be sufficient if the government wanted to take away my gun or my right to publish a book for it to just provide a procedural right. Because we could go to a hearing and the government could say, you've had an opportunity to be heard. We find there is no reason to block you from having a gun or to publish a book, but nonetheless, we are blocking you from having that gun and possessing a book. It doesn't make any sense. The whole point, as the Supreme Court said in Harper, of having a substantive constitutional right is that there's a federal substantive heightened scrutiny standard for removing that right from someone. That's the key in this case. What the Fifth Circuit panel held was a period of wealth-based detention under Bearded, under Frazier, this court's binding opinion, under a whole line of cases. It might be okay. You might be able to jail someone because they can't make a payment. All you have to do is show that you're serving some interest. They had that chance. We had an eight-day hearing. They hired experts. We cross-examined each other's experts. We put in hundreds of thousands of cases. We did statistical analyses. We looked at evidence from all over the country. And the district court found that there was no evidence to justify it. It's the same thing as if they passed a new bail schedule tomorrow that said, all male arrestees are detained for 48 hours and all female arrestees are released. That might be okay, but they'd have to show some reason for just detaining the men. In your view, in the district court's fact findings, is any distinction made between the 48-hour period before the required individualized hearing and thereafter? I'm not sure I follow the question you're asking. Well, here we're talking about the period between arrest and the 48-hour period, which at least arguably is a new aspect. At least that's what the district court said. It's a new aspect. Are the fact findings addressed to that period or just to bail in general? I see. They're addressed in general because both periods were at issue at the preliminary injunction hearing. But, Your Honor, I think this is a crucial point. The problem with the district court's first injunction, admittedly, was that it said that even after an individualized hearing, you can't detain someone because they can't afford money bail. That was based on the district court's, what this court held, wrong interpretation of Texas law. And, of course, federal courts can't issue injunctions. Even if you think that Texas law doesn't let you detain misdemeanors, federal courts aren't allowed to enjoin people on that after Pennhurst. So, admittedly, the initial injunction was broader than the federal constitutional theory that we raised. But the revised injunction says something very different. And the reason it's so much narrower is it says at an individualized hearing, and you can detain anyone you want until the individualized hearing, but at that hearing, you're now permitted to detain people. You can set an unaffordable money bond. So it doesn't abolish money bail. It doesn't say that the Eighth Amendment is unconstitutional. It allows them to set money bond, money bond that people can't afford. All that it requires is before you set a money bond, you have to have an individualized hearing  And so I think it's really, really vital to close the loop on this point. After the trial in this case, if this statistics that you asked about, Judge Smith, proved true, if forfeiture rates are a good proxy for failure to appear, and if they show that failure to appear skyrocketed, and if they show that secured money bond is more effective than unsecured bond or nonfinancial alternatives, they can even discriminate in the first 48 hours. They could then apply a secured bail schedule because they will show, they will have a reason, they'll have a benefit that they're getting in court appearance or public safety. But that's not this universe. The universe of facts that this panel has to look at, the facts that have been affirmed by the other panel of this court, are that secured money bond has no impact. It's like we're in a world where they've tried to say that all men must be detained, and the district court made a factual finding that they had no basis for that. They want you to say that because the Fourth Amendment requires a probable cause finding in 48 hours, they can detain anyone they want for any reason in that 48-hour period. They could say all black arrestees are detained. Of course, when I ask the question to the other side, they're going to say we're not arguing that. Of course they are, because if they were arguing that, we would say strict scrutiny or a minimum intermediate scrutiny if it was gender-based discrimination. We all know that. What we're talking about here, at least if we're talking about the merits, we're talking about whether heightened scrutiny applies and when. And as I understand your position, it applies whenever there's any wealth-based distinction, even if it's purely disparate impact during the 48-hour period. Have I misstated that? Just with one caveat, Your Honor. The holdings of the Supreme Court and of this court in Frayser are not just that when there's any wealth-based distinctions. It's only wealth-based distinctions that result in detention. It's a special category. The Supreme Court has carved out a special category. And when wealth-based detention is involved, I mean, this is the holding of Frayser, which is binding on this court. This is the holding of the panel. Heightened scrutiny applies to these distinctions. I take Your Honor's point that we would be in a different world than the two worlds I just described with gender and race if heightened scrutiny didn't apply. If this court rejects the panel's decision that heightened scrutiny doesn't apply, we'd be having a different argument. That is something that they have actually argued again in their summary judgment briefs. The district court is going to rule on that. But that's an argument that they raised repeatedly in their merits briefing to the first panel, and it was rejected. I respectfully submit that a rushed briefing schedule reconsidering an issue that they've already briefed, like most of the issues that they've raised, is not the appropriate time to announce a new departure from circuit precedent that wealth-based detention does not trigger strict scrutiny. Well, I mean, would you agree that we are bound by the previous Fifth Circuit panel's analysis of when the standard of scrutiny, I didn't ask that well. Are we bound by the analysis of the previous panel regarding the standard of scrutiny under an equal protection violation? I mean, we have to follow that, right? I think, yes, Your Honor. You have to follow all prior circuit precedent, including the panel decision. The panel, because we're talking about the mandate rule here in part, right? Yes, Your Honor. I think if you look at the cases that the panel cited, and if you look at the cases that are binding on this court, like Bearden v. Georgia. Well, I'm looking at Rodriguez because the panel pretty specifically discussed Rodriguez. Yes, and in Rodriguez itself, the Supreme Court, it carved out the Tate-Williams-Bearden line of cases. It said the disparate impact holding does not apply to these cases. I mean, that's a Supreme Court holding. If this court were to announce a new rule that you had to prove intent in order to trigger heightened scrutiny when you're jailing someone because they can't pay, Bearden would have been wrongly decided. I mean, the Supreme Court didn't, when the judge in Bearden jailed the probationer because he couldn't afford to make a fine payment, they didn't inquire into the judge's intent. They didn't say, was the judge intending to jail this person solely because he's poor? They said you issued an order to pay a fine. You didn't ask the person whether they could afford to pay it. You didn't make a finding of whether they could pay it. That triggers scrutiny because you just took away someone's liberty because they couldn't make a payment. Is it also the case under Rodriguez that you have to not only find jailing because of the wealth distinction, but also an absolute deprivation of the liberty interest? You also have to find an absolute deprivation of the liberty interest? Well, yeah, I think the cases in Bearden and— I'm asking about Rodriguez. Well, Rodriguez doesn't involve wealth-based attention at all. So one of the—the way the Supreme Court distinguished Tate, Williams, and Bearden line of cases was it said, when you're being deprived of your physical liberty, that's an absolute deprivation of your physical liberty. So, of course, any time that I'm put in a jail cell, I'm given an absolute deprivation of my liberty. But here it would be for a 48-hour period so that an individualized hearing could then be held. Is that an absolute deprivation of a liberty interest? Yes, it is, Your Honor. The Supreme Court has held repeatedly when you're talking about someone's physical property or their physical liberty, even a temporary deprivation is an absolute one. That's what Fuentes v. Shiven, the seminal Supreme Court case, was. I mean, if the government takes my bank account over for two days or if the government puts me in a jail cell for two days, it has absolutely deprived me of that liberty interest for two days. So I think what the question this court really has to grapple with is, can the government for no reason at all or for any reason at once detain someone for a couple of days in a jail cell? That's really the question that we're arguing about here today. Our position and the panel's position is, yes, maybe— But that's not the question. The question is, can they detain someone for a 48-hour period while allowing someone else to go free because they could pay the bond? Isn't that right? It's whether those two people are so dissimilarly situated that the Equal Protection Clause prevents it. It's a little bit different from that, Your Honor, because it's about whether I could go free. What they're really saying is, I could go free, me, with all of my background and all of my record. This person, I could go free if I paid $100. And what we showed at trial, at the preliminary injunction hearing, was there's absolutely no basis to put me in that position. And I think the question for this court is, given the factual record where there's zero basis for it, are they allowed to do it to people knowing that it's going to detain the poor? Look, we have serious disagreements that are being ironed out in summary judgment. And this is an emergency appeal about an issue that has been litigated extensively before a meticulous district court. There are factual findings, and I think it's quite telling. I would just move very quickly to irreparable harm. You cannot find irreparable harm in this case without rejecting the district court's factual findings. Because the only assertion of irreparable harm that they're making on the facts is that there's this giant increase in failure to appear. That has been thoroughly debunked by two of the defendants themselves, by the district attorney, by expert analysis, and by the district court's factual findings. You have to reject that finding to find that they're suffering any harm. An emergency stay appeal is not the time to be making these bold, sweeping new arguments about the Eighth Amendment and equal protection and substantive constitutional rights. And I think when the court goes back and looks at the obfuscation that's going on about a substantive and a procedural right, you'll see that all of the Supreme Court cases, all of this circuit's cases that talk about wealth-based attention, they're talking about a substantive constitutional right. It's not a substantive due process right. So Mr. Cooper's arguments about Graham v. Conner are not relevant to this appeal because this appeal is about the equal protection and due process issues. It's a substantive constitutional right like the First Amendment or the Second Amendment. You can deprive someone of it, but you have to have a good reason. And I think that point is lost in all of their briefing. The only harm they can show, the only possible way there could be any harm to them is if the district court's factual findings are wrong. Because under the district court's factual findings, her order has actually improved court appearance and improved public safety, and that's what we're seeing in the data. Now, we disagree about what the data shows, and they've submitted a non-expert declaration solely linked to bond forfeitures. Now, mind you, they have failure-to-appear data. They didn't submit it to this court. They submitted bond forfeiture data. Bond forfeiture data is entirely in their control. So I want to take a step back to also point out the district court in this case is experienced. She has issued a number of orders throughout her career. Her findings in this case are meticulous. They're carefully considered. They were carefully calculated by an experienced district court judge who doesn't want to see harm to the public interest, who doesn't want to see crime increase, who doesn't want to see failure-to-appear increase. She looked at all of the data in front of her, and yes, she will have different data at trial. She may make a different factual finding at trial, but she looked at all of the data in front of her, and she said there is no basis for this distinction that they're drawing. If it's okay with the court, I would like to just address very, very briefly the Pizer argument, unless the court has other questions on the merits of what we've been discussing. If we have other questions, we'll let you know, but you can go ahead and discuss it. Thank you, Judge Schnitt. The Pizer argument is waived. Any claim that it's not waived is completely foreclosed by the Fifth Circuit opinion. By their own admission, they're alleging at least that we saw a wide-ranging release order at the preliminary injunction. They're alleging that the district court issued a wide-ranging release order. They never raised Pizer in any of their many, many filings. They never raised it in their answer to the complaint. The first time they raised Pizer was in an emergency stay motion after the first injunction. The mandate rule clearly covers this. There's absolutely no way that, given all of the same arguments apply, that they can now come to the court and say, yeah, the panel held that we had waived it during the initial appeal, but now that the district court has imposed a revised injunction pursuant to that mandate and that appeal, we can somehow raise it all anew. Well, the argument is, and I want to hear your response to it, is that the Section 7 remedy is a new thing. And the district court says it's a new thing. It's responsive to, at least the district court says, it's responsive to something that arose after the Fifth Circuit. Now, let's assume that's true. Why can't they raise a new argument in response to a new thing? Well, it's a new bail schedule, but the Pizer could have and should have been raised with the prior release order. Mr. Cooper's own argument is that the first one was a release order and that was bad, and so you should reject the second one because that's also a release order. They could have made the same argument, and they didn't. They chose not to raise it. So I think they're seizing on ambiguity with the word new. It's not a new set of constitutional arguments. It's just a new bail schedule. So the district court was saying, one of the reasons the Fifth Circuit gave me discretion is that there's been some new tweaks to their post-trial bail processes, and they have a new bail schedule. The district court responded to that, as she certainly should have, right? But it doesn't mean that they can all of a sudden now bring in arguments that they had waived. But I don't think the court needs to linger long on the waiver question because the argument is clearly wrong. Nothing about our constitutional claims, and you'll see this if you look at the summary judgment briefing, nothing about our constitutional claims says that any arrestee has a right under the federal constitution to be released. That's dispositive. Pizer is about what theory of constitutional rights are you raising? Would it require you to be released from custody? If yes, it has to go to habeas. Gerstein v. Pew is the classic Supreme Court case on this. The arrestees in Gerstein brought a class action 1983 lawsuit saying, we're illegally in jail right now because you haven't given us a probable cause finding. The fact that they hoped that they would get out if they got a probable cause finding, the fact that there's a substantive legal standard under the Fourth Amendment, probable cause, it's different from the substantive legal standard under equal protection, but that doesn't mean that Pizer wasn't applicable. In fact, the Supreme Court rejected the state of Texas' argument that they should have brought their claims under Pizer in Gerstein. We addressed this argument. I point the court to our merits briefing in the first appeal on the Pizer question. There's absolutely no way that one could read our federal constitutional claims that we're raising here in this court as saying that any arrestee has to be released from custody. We acknowledge that if they make the right substantive findings and provide the right procedural safeguards, they can detain any arrestee and they can set unaffordable money. Let me ask you about Section 8. Section 8, as I'm paraphrasing, but as I understand it, requires the release of a misdemeanor arrestee after 48 hours. It requires the release. In your mind, does McLaughlin, city of Riverside versus McLaughlin, does it require the release of an arrestee after 48 hours? Is that what McLaughlin holds? What McLaughlin holds is that under the Fourth Amendment, if probable cause has not been found after 48 hours, there's a presumptive constitutional violation. McLaughlin does admit and allow that under exceptional circumstances, a person can be detained longer without finding a probable cause. Well, the presumption shifts to the government after 48 hours to demonstrate that there are extraordinary circumstances or some other exception. And here they could have, in the remand proceedings, they could have said, wait a second, Your Honor. But Section 8 does something different than that, right? Section 8 says release them. Well, the district court asked all the parties for briefing about these sections. They could have said, wait a second, Your Honor, there's no exceptional circumstances exception in your release order. What you should do is say, after 48 hours, the government has to justify the detention under the exceptional circumstances exception. If the court wanted to remand with an instruction to include that in the order, we would have no objection, although I will note that they've waived that by not raising it. I mean, now they're coming into appeal and saying the district court wasn't careful. The district court included this requirement, which is contrary to McLaughlin. But they had a chance to brief it. The district court actually gave multiple rounds of briefing. She was incredibly meticulous about this revised injunction order. We briefed it. So I don't understand why they would be allowed to come into this court and make a new argument. But again, we would not have an objection to a remand for a burden-shifting. So the critical part of this, I think all parties understand, is Section 7. So then you couldn't – I mean, in light of what you just said, how could you argue irreparable harm if we decided to stay Section 8 to you? If you said you wouldn't object to, you know, revising Section 8 to have an exceptional circumstances requirement along the lines of McLaughlin, how could there be irreparable harm to your clients? Well, Your Honor, it's not an unlimited license to just detain people with no hearing. So we would have concerns that very particular language be inserted to ensure that it only happens under exceptional circumstances. So assume a regime in which there would be true individualized fact-finding and assessment as to each arrestee by a neutral decision-maker. Does that summarize everything that you're asking for in this case? If that sort of regime were to obtain here in Harris County, would that be enough? However it's structured. Well, Your Honor, at the hearing, it would be a federal substantive standard that would have to be met. It would – under the Equal Protection Due Process Clause and under the fundamental right to pre-trial liberty, which is not at issue in this appeal but is at issue in the broader case. So the answer is yes to Your Honor's question. But at the bail hearing, just like in federal court, the government, if they wanted to detain a person who's presumptively innocent prior to trial, they can do so. They just have to make a finding that there is no other alternative that could meet the government's interest. And if they can't show that a less restrictive alternative doesn't meet their interest, then no, they can't detain a person. So to answer your question more succinctly, I hope, what we are asking for in this case is individualized bail proceedings at which certain procedural safeguards are met and at which a finding of necessity is made before a person is detained. That's what Salerno held. That's uncontroversial. It's what every state Supreme Court to consider the issue has held. It's not a controversial finding in our view. And what this appeal deals with, though, Judge Smith, is what policies apply prior to that individualized hearing? Before we have an individualized hearing, are we allowed to discriminate on various bases? And if so, and the answer I think is yes, you can discriminate, even under the Constitution on the basis of certain characteristics. You just have to have good reasons. And the eight-day hearing showed that they haven't shown good reasons yet. But they might be able to show good reasons. That's what the trial is for. And so I think I understand that my time is up. But I would just say to your question, Judge Smith, the trial will determine what happens in terms of those factual findings. But for this proceeding, those factual findings are the record. All right. Were you able to speak to everything? If you'd like 30 seconds to summarize, you may, but you don't have to. I think I covered everything. All right. Thank you very much. Thank you so much. All right. Mr. Cooper, you've saved time for rebuttal. Yes, thank you, Your Honor. With respect to whether the previous panel ordered substantive or procedural relief, let's just go to their words. And this is not just some errant, vagrant comment. The equitable remedy necessary to cure the constitutional infirmities under both clauses is the same. The county must implement the constitutionally necessary procedures to engage in a case-by-case evaluation of a given arrestee's circumstances. Taking into account the various factors required by Texas law, only one of which is the ability to pale, the court fortified that proposition by saying only procedural relief is necessary and offering a detailed model injunction that contained only procedural relief. Counsel suggests that somehow the question whether the criterion, if you will, in the bail schedule context, being wealth, is no different from race or sex or religion. And that we might as well be up here arguing that the city, the Harris County, can detain whites instead of blacks or vice versa. What possible theory is race or sex or any of these immutable characteristics relevant to the only question that bail tries to answer? Flight risk and safety of the community pending while the individual is at large. Race has nothing to do with that. But sureties does, sufficient sureties. And since the Magna Carta, Your Honor, money bail has been viewed as sufficient surety. And wealth is inevitably a factor involved when one is providing sufficient sureties, at least when that surety is money bail. Counsel suggests that the fact finding that there's no difference in the incentives for an individual released on secured bail versus an individual released on personal recognizance, essentially, to return to court is indeed a counterintuitive finding, Your Honor, that was based upon. But this court has already upheld that finding. It's upheld that finding is not clearly erroneous. That finding was based upon predictions. We now have a year of actual experience. We stand by the data that we submitted to this court, and it's in the record. It's been submitted on remand in the district court. Do we have to disagree with the district court's fact finding? A large part, as I understand it, of your counsel opposite's presentation is that in order to find for you on this stay motion, we have to overturn the district court's fact findings. What's your response to that? No, no, no, not at all, Your Honor. This case focuses on pre-hearing application of a preset bail schedule, something that has been in place for decades in jurisdictions all over the circuit, something that was contemplated by the court's original pre-I, that was contemplated by this court's model injunction, and that this court in Bank and Rainwater said is a good thing, is a good thing. Now it's unconstitutional. Harris County was under a federal decree to impose a master bond schedule. We're under decree to do that. That decree, according to this new theory, is unconstitutional. I want to go to your question, Judge Duncan, about purposeful versus disparate impact, disparate treatment versus disparate impact. In order for it to be purposeful, Your Honor, the court in Feeney, the Supreme Court in Feeney, says it has to be imposed because of its impact, its impact there, veterans' preferences, as I recall it anyway, on women. Here, Harris County, does it impose bail because or in spite of the fact that it will actually require the detention for just the brief period of time that it takes for the county to pull itself together and give them a hearing? No, Your Honor, that's not purposeful discrimination. Counsel says all they're requiring is that you have to have a hearing before you can impose bail, period. Again, this is a declaration that application of a master bond schedule is unconstitutional, pure, and simple. Notwithstanding, this court's lauding master bond schedules, again, in Rainwater as a speedy and convenient method to gain one's pretrial freedom for those who can take advantage of it. Yes, those are people who can afford to do so. But keep this in mind. That hearing that he says is a necessary prerequisite cannot take place as a practical matter earlier than the county in fact does it, which is 24 hours, and the Constitution permits it 48, which, Your Honor, brings me to Section 8. But before I get to that, let me just say my time has expired. You have 30 seconds to summarize whatever you'd like to summarize. Well, I want to use that 30 seconds, Your Honor, if the court will indulge me, simply to say, with respect to Prizer, the district court below addressed it at length in her stay opinion. She didn't suggest that we had waived Prizer this time. And, Your Honor, that's not reasonable. And I would only conclude by saying Section 8 is, in fact, Judge Duncan, foreclosed by McLaughlin, pure and simple. Thank you very much, Your Honor. All right. Thank you. The motion for stay pending appeal is under submission, and the court is in adjournment.